CELINDA A. FULTON, Respondent, *v.* SOLON M. N. WHITNEY et al., Appellants.

A trustee cannot purchase for his own benefit property which, although not the subject of the trust, is connected with it in this, that a sale of the property for less than its value will diminish the trust fund; and a purchase by him for less than the value of the property inures to the benefit of the *cestui que trust.*

No actual fraud on the part of a trustee so purchasing need be shown to give to the *cestui que trust* the benefit of the purchase.

The will of P. W. bequeathed to his executors W. and T. a fund in trust First. To pay debts not otherwise provided for. Second. To pay certain legacies. He left certain real estate incumbered by a mortgage given to secure his bond. The mortgage was foreclosed and the premises bid off by W., T. and their partner J., who was cognizant of all the facts, for $5,000. The premises were worth $10,000. The sale left a deficiency of $6,577.48, which, as a debt unprovided for, was paid by the executors out of the trust fund, thereby rendering it insufficient to pay said legacies. Plaintiff, one of the legatees, and by the death of the other legatees entitled to all of said legacies, was an infant, W. being her general guardian. In an action to have a trust declared in plaintiff's favor in the property purchased, *held*, that W. and T. could not become purchasers for their own benefit; that, while they were not bound to buy in the property for the benefit of the trust estate, having no trust funds applicable to that purpose, they had no right, by undertaking to purchase for their own benefit, to create an interest in themselves hostile to their duty as trustees; that J. stood in no better position than his associates in the purchase, but was affected by the same legal disabilities.

Also, *held*, that a provision in the decree of foreclosure authorizing any of the parties to become purchasers was no protection to the purchasers

here, nor did the confirmation of the sale have such effect, as the rights and equities of plaintiff were not before the court or involved in the foreclosure suit.

Also, *held*, that a decree of the surrogate settling the accounts of W. and T. was no bar to the action.

The judgment of the court below allowed to plaintiff the value of the real estate at the time of the purchase, less the amount paid. *Held*, no error; that the judgment was as favorable to defendants as the circumstances of the case would admit.

(Argued June 2, 1876; decided September 19, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon a decision of the court at Special Term. (Reported below, 5 Hun, 16.)

This action was brought to have a trust declared in plaintiff's favor in certain premises purchased by defendants.

In 1862, Parkhurst Whitney, of Niagara, Niagara county, died, leaving a will, by the thirteenth clause of which he bequeathed to his grandchildren, Olympia, Helen and the plaintiff, $4,000 each, to be paid in the manner and from the fund thereinafter provided. By the fourteenth clause he bequeathed to the defendants Whitney and Trott, who were appointed executors of the will, a mortgage made by them and the defendant Jerauld, to the testator, known as the Whitney mortgage, in trust: First, to pay the testator's debts, not otherwise provided for; second to pay out of its proceeds said $4,000 to each of said grandchildren, the interest on said sum to be paid to them, and the principal to be invested and paid in the manner particularly specified in said clause; the remainder of said proceeds were also disposed of by said clause, it finally providing that the legacies bequeathed to said grandchildren should be paid from no other part of the testator's estate than the said mortgage. By the fifteenth clause of the will the residuary estate was given to his grandchildren living at the time of his death. The will was admitted to probate, and the defendants Whitney and Trott entered upon the discharge of their duties as executors and trustees under said

will. The plaintiff's parents died prior to the testator's death, and the defendant Whitney was appointed her guardian. She became of age March 27, 1868. In April, 1852, the testator purchased of one Woodruff certain premises, giving his bond and mortgage for the entire purchase-money, $10,000. These premises formed part of the residuary estate. This mortgage was foreclosed after the testator's death; the plaintiff and the defendants Trott and Whitney, as executors and as individuals, being parties defendant. Judgment was perfected November 14, 1866. By the terms of the judgment, either of the defendants was authorized to purchase the mortgaged premises at the sale thereof under the judgment, and Whitney and Trott, as executors, were ordered to pay any deficiency out of any moneys in their hands applicable to the payment of the debts of the said testator. The premises were sold at public sale, under the judgment, to the defendants, Whitney, Trott and Jerauld, for $5,000, they being the highest bidders, and a conveyance of the same was made to them by the sheriff. The sheriff reported a deficiency of $6,577.48, which was paid by the executors January 9, 1867, out of the proceeds of the Whitney mortgage, they having no other funds to pay the same. This sale was confirmed by the Special Term, the plaintiff in this suit, and the other infant defendants in said foreclosure suit, appearing and being heard by their guardian ad litem. The evidence showed that said premises were worth at the time of the sale, $10,000. Helen died in 1863, and Olympia in 1865, leaving the plaintiff their next of kin, and the only person entitled to the legacies. The defendant Jerauld, since 1864, has been a partner in business with Whitney, and Trott was cognizant of the terms of the will and of all the circumstances, and after the purchase on said foreclosure the firm removed the buildings from the mortgaged premises, and at large expense erected a stone building, covering the whole front, four or five stories high.

On the 19th day of April, 1872, Trott and Whitney, as executors and trustees, applied for a final settlement of their

accounts to the surrogate of Niagara county. Citations were served on all parties interested, excepting the wife of the defendant Trott. The plaintiff appeared by her proctor. The defendants Trott and Whitney charged in their accounts $6,577.48, the deficiency paid on the Woodruff bond and mortgage. This was objected to by the plaintiff. The surrogate made his final decree, by which said accounts were finally settled and allowed, including the sum upon said deficiency, and it was ordered that the balance remaining in the hands of said executors and trustees was $1,673.15, which was ordered to be paid to the plaintiff, and was so paid.

It was proved by the record of a judgment of the Supreme Court in an action brought by said executors, and by Whitney, as administrator of the estates of Olympia and Helen, against the plaintiff and the other parties in interest, that the court in said action adjudged it to be the true construction of said will, that the Woodruff mortgage should not be paid by the executors, unless in case of foreclosure the premises should fail to pay the amount of the bond accompanying the same, in which case the executors were required to pay the deficiency.

The court found as conclusions of law, in substance, that defendants by so purchasing became chargeable in equity for the difference between what they paid on the purchase and the actual value of the premises, amounting, with interest, to $7,343.92, and that plaintiff had a lien on the premises for that sum, and judgment was directed directing a sale of the premises in case of non-payment, and judgment was entered accordingly.

By stipulation between the parties this sum was reduced to $6,010.19.

*Samuel Hand* and *E. C. Sprague* for the appellants. The *cestuis que trust* had no title, legal or equitable, to the property, and the trustees owed them no duty as to it. (*Sheldon* v. *Sheldon*, 13 J. R., 220; *Elliott* v. *Wood*, 45 N. Y., 71; *Van Epps* v. *Van Epps*, 9 Paige, 241; *Colborn* v. *Morton*, 3 Keyes,

305; *Rogers* v. *Patterson,* 4 Paige, 409; *King* v. *Talbot,* 40 N. Y., 76; *Ackerman* v. *Emott,* 4 Barb., 626; 2 Kent, 416; *Hawley* v. *Cramer,* 4 Cow., 738; *Beardsley* v. *Rott,* 11 J. R., 465; *Hollingsworth* v. *Spaulding,* 54 N. Y., 636.) This action could only be sustained by proof of actual fraud. (1 Perry on Trusts, etc., §§ 427, 429.) There was no resulting trust arising to plaintiff in the lands in question. (*S. Bap. Soc.* v. *Clapp,* 18 Barb., 35; *Van Epps* v. *Van Epps,* 9 Paige, 241; *Tony* v. *Bk. of Orleans,* id., 663; *Jackson* v. *Woolsey,* 11 J. R., 446; *Sheldon* v. *Sheldon,* 13 id., 220.)

*A. K. Potter* for the respondent. The law does not allow persons standing in relations of trust and confidence to another to speculate, or in any way make profit to themselves, at the expense of the person whose rights are thus confided to them. (*Colburn* v. *Morton,* 3 Keyes, 296; *Gardner* v. *Ogden,* 22 N. Y., 327, 343; *Van Epps* v. *Van Epps,* 9 Paige, 237.) If defendants were not technically trustees, they were not exonerated by that fact, in respect to the property in question, if they owed plaintiff any duty inconsistent with a purchase of it at a sacrifice to her. (22 N. Y., 343; *Dobson* v. *Racey,* 3 Sandf. Ch., 60; *Gallatin* v. *Cunningham,* 8 Cow., 361; *Torrey* v. *Bk. of Orleans,* 9 Paige, 649.) They owed plaintiff a duty in respect to this property. (*Campbell* v. *Jonston,* 1 Sandf. Ch., 148; *Case* v. *Carroll,* 35 N. Y., 385.) It is no defence that it was a judicial sale, or that no greater price could have been obtained from others. (*Jewett* v. *Miller,* 10 N. Y., 405; *Davoe* v. *Fanning,* 2 J. Ch., 265.) Defendants are not protected by the order confirming the sale, or the provision in the judgment allowing the parties to purchase at the sale. (*Conger* v. *Ring,* 11 Barb., 356, 360; *Y. B. Assn.* v. *Makenzie,* 22 N. Y., 343, 8 Cow., 372, 377, 380.)

RAPALLO, J. The main question in this case is, whether the defendants Whitney and Trott were, by reason of their position as executors and trustees under the will of Parkhurst Whitney, deceased, precluded from becoming purchasers for

their own benefit, at the foreclosure sale, of the real estate covered by the Woodruff mortgage.

This real estate was not part of the property held by them in trust for the plaintiff. The trust fund consisted of the proceeds of what is called in the case, the "Whitney mortgage." That mortgage was, by the will of Parkhurst Whitney, bequeathed to the defendants Whitney and Trott, in trust: First, to pay out of the proceeds the debts of the testator not otherwise provided for by his will; secondly, to pay to the plaintiff and her two sisters a legacy of $4,000 to each; thirdly, to pay certain other legacies, and lastly, if there should remain any surplus, after making these payments, such surplus was to be divided among all the grandchildren of the testator.

Before the sale under the Woodruff mortgage, the two sisters of the plaintiff had died, and she, as their only next of kin, had become entitled to the sums bequeathed to them. She was consequently entitled out of the proceeds of the Whitney mortgage to receive $12,000, provided that amount should remain after the payment of the debts of the testator not specially provided for by his will. It appears from the findings and evidence that the proceeds of the Whitney mortgage so held in trust for the plaintiff were sufficient, after paying such debts, to have paid to her in full, or nearly so, the amount to which she was thus entitled, provided no deficiency should arise on the sale under the foreclosure of the Woodruff mortgage. The debt secured by that mortgage was one of the debts of the testator not specially provided for by his will, and was, consequently, under the provisions of the will, chargeable upon the proceeds of the Whitney mortgage in preference to the plaintiff's legacy; and in an action to which all the persons interested were parties, it had been adjudged that the premises covered by the Woodruff mortgage must primarily be charged with the payment thereof, and that the executors could not resort to other funds in their hands until the mortgaged premises had been sold and the value thereof applied upon the mortgage debt.

SICKELS — VOL. XXI.     70

The result of all this was that the proceeds of the Whitney mortgage, which were held by the defendants Whitney and Trott, in trust for the plaintiff, stood bound, as surety for the payment of any deficiency which might arise on a foreclosure of the Woodruff mortgage — the mortgaged premises being the primary fund.

In this position of affairs an action was commenced for the foreclosure of the Woodruff mortgage. Judgment of foreclosure and sale was entered therein, by which it appears that the amount due for principal, interest and costs, was $11,577.48. The value of the mortgaged premises, at the time of the sale, is found in this action to have been $10,000. The defendants Whitney and Trott, together with the defendant Jerauld, who was their partner, and cognizant of all the facts of the case, became purchasers at the sale for $5,000, leaving a deficiency of $6,577.48, which was paid by the defendants Whitney and Trott out of the proceeds of the Whitney mortgage held in trust for the payment of the legacy due the plaintiff, thus rendering the trust fund insufficient to pay the legacy.

The first question now presented is, whether the defendants Whitney and Trott were, under the circumstances, competent to become purchasers for their own benefit at the sale under the Woodruff mortgage.

The case is somewhat novel, but a consideration of the principles upon which persons acting as trustees are held by courts of equity to be incapable of obtaining any benefit to themselves by dealing with the trust property, leads us to the conclusion that a dealing like the present, with other property upon which the very existence of the trust fund depends, is equally objectionable.

It was clearly necessary to the preservation of the trust fund that the premises sold under the Woodruff mortgage should bring their full value, or as nearly so as could be obtained, they being the primary fund for the payment of the mortgage, and the trust fund being liable for any deficiency. It was consequently the duty of the trustees that whatever action they might take in the matter, should be in the direc-

tion of enhancing the price which the mortgaged premises should bring at the foreclosure sale. They did not, it is true, have the direction of the sale, yet it was their duty, so far as lay in their power, to see that proper measures were taken to give publicity to it, and bring it to the attention of persons likely to become purchasers. They were not bound to buy in the property for the benefit of the trust estate, having no trust funds applicable to that purpose ; but they had no right, by undertaking to purchase for their own benefit, to create an interest in themselves, hostile to their duty as trustees. As purchasers for their own benefit, it was to their interest to prevent competition at the sale, and to so manage that they could bid in the property at the lowest price, and this was directly in conflict with their duty as trustees. It is found, as matter of fact, that, at the time of the sale, the premises were worth $10,000, and their value was well known to the defendants. The plaintiff was an infant ; the defendant Whitney was her general guardian, and the defendant Trott co-trustee of the trust fund. Upon them the plaintiff necessarily depended for the protection of her interests. It does not appear that any effort was made by the trustees to obtain an advantageous sale, but that they attended the sale and bid in the property for themselves and their partner, Jerrauld, for one-half its value, leaving a deficiency of $6,700, which they paid out of the trust fund.

No actual fraud on the part of the defendants is alleged or found, nor is it necessary that there should be. The object of the rule which precludes trustees from dealing for their own benefit, in matters to which their trust relates, is to prevent secret frauds by removing all inducement to attempt them. (*Keech* v. *Sandford*, 3 Eq. Cas. Abr., 741 ; *Whelpdale* v. *Cookson*, 1 Ves., Sr., 8 ; *Davoue* v. *Fanning*, 2 J. Ch., 252 ; *Case* v. *Carroll*, 35 N. Y., 385.)

It is urged, on the part of the appellants, that this rule is not applicable to the present case, because the mortgaged premises formed no part of the trust estate. This objection was answered by Chancellor WALWORTH, in the case of *Van*

*Epps* v. *Van Epps* (9 Paige, 241), by saying that the rule is not confined to trustees or others who hold the legal title to the property to be sold, but applies universally to all who come within its principle, which is, that no party can be permitted to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform in relation to such property, which is inconsistent with the character of a purchaser on his own account. In the case cited, the chancellor held that the holder in trust of a junior mortgage owed a duty in case of the foreclosure of a prior mortgage on the same premises, to make the mortgaged premises produce at the sale as much as possible, and that he was thereby precluded from becoming a purchaser at the sale under the first mortgage. That case is very analagous to the present one. It was just as essential to the protection of the trust fund that the premises sold under the Woodruff mortgage should bring their value, as if the fund had been secured by a second mortgage on the same premises. In either case, to whatever extent the mortgaged premises should fall short of producing their full value, the loss would fall directly on the trust fund. The duty to protect the trust fund was the foundation, in both cases, of the duty in reference to the premises sold. Identity of the security was not essential. We have examined the recent case of *Hickley* v. *Hickley* (Law Rep., 1 Ch. Div., 190), but do not find in it any thing which changes our view of the present case.

The argument that the defendants benefited the sale by becoming bidders is one which might be used in every case where a trustee bids at a sale of property to which his trust relates. It has been so often used and so often refuted that it is not necessary to consider it here.

The provision in the decree of foreclosure, that any of the parties to the action might become purchasers at the sale, is no protection to the purchaser in a case like the present, neither can the confirmation of the sale have any such effect. The rights and equities of the plaintiff, as between her and her trustees, were in no form or manner before the court, or

involved in the action ; nor is it the purpose of the ordinary provision allowing any party to the action to purchase, to affect equities which may exist between the purchaser and any other person for whose benefit the purchase may be deemed to have been made. Such a provision, in foreclosure cases, is usually inserted for the purpose of removing any doubt as to the right of the complainant, who conducts the suit and the sale, to become the purchaser. If the purchaser, though a party to the action, is acting in a fiduciary capacity arising outside of the relation of mortgagor and mortgagee, his liability to his *cestui que trust* cannot be affected by such a provision, nor by the order confirming the sale. (*Gallatin* v. *Cunningham*, 8 Cow., 377, 381 ; *Torrey* v. *Bank of Orleans*, 9 Paige, 661; *Conger* v. *Ring*, 11 Barb., 356.)

The decree of the surrogate, settling the accounts of the executors is not a bar to this action. So far as their accounts as executors are concerned, it is conclusive only so far as declared by the statute. (2 R. S., 94, § 65.) So far as their accounts as trustees are concerned, it is conclusive only as to the matters embraced in the accounts, or litigated or determined on the settlement. (Id., § 66, as amended by Laws of 1866, chap. 115.) The right of the plaintiff to the benefit of the purchase, made by the executors at the foreclosure sale, and to have a trust declared in her favor in the premises purchased, was not embraced, nor was it litigated or determined on the accounting, nor were the proper parties before the surrogate, to have enabled him to adjudicate upon it, even if he had had the power so to do. He, however, had no jurisdiction to declare a trust; all that he could do was to settle the accounts of the trusts created by the will.

The defendant Jerauld claims that the purchase should not be disturbed, so far as his interest is concerned, he not being either executor or trustee. But he was the partner of Whitney and Trott at the time of the sale, and cognizant of all the facts and of the rights and equities of the plaintiff. He, therefore, stands in no better position than the trustees with whom he was associated in the purchase, but is affected with whatever

legal disability attached to them. (*Cumberland Coal Co.* v. *Hoffman Co.*, 16 Md., 456 ; *Cumberland Co.* v. *Sherman*, 30 Barb., 553.)

The judgment was as favorable to the defendants as the circumstances of the case would permit, and we see no reason to disturb it. It should, therefore, be affirmed for the amount agreed upon by the stipulation of the parties, dated April 13, 1876, with interest and costs.

All concur, except CHURCH, Ch. J., not voting ; MILLER, J., absent.

Judgment affirmed.